**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
GULFPORT-6 DIVISIONAL OFFICE DIVISION**

| | | |
|---|---|---|
| In Re: | * | |
| CASHELIA CANELLE LEWIS | * | CASE NO.: 24-51798-KMS |
| *aka* CASHELIA CANELL LEWIS | * | |
| | * | CHAPTER 13 |
| Debtor. | * | |
| | * | |
| | * | |

**MOTION FOR RELIEF FROM AUTOMATIC STAY**

Ally Capital (hereinafter "Movant") respectfully shows and represents unto this Court as follows:

1. Debtor Cashelia Canelle Lewis entered into a Retail Installment Contract (hereinafter "Contract") with CarMax Auto Superstores, Inc. (hereinafter "Dealership") granting a security interest in the following personal property:

   **2017 HYUNDAI TUCSON**

   **VIN KM8J3CA22HU307506**

   Contemporaneously with its execution, the Contract was assigned to Movant, a copy of said Contract is annexed hereto and made part hereof by reference. A copy of the Contract is attached in Exhibit "A".

2. The security interest of the Movant in the above-described personal property was perfected by the issuance of the Certificate of Title, a copy of which is annexed hereto and made part hereof by reference. A copy of title is attached as Exhibit "B".

3. David Rawlings was appointed Acting Trustee of the estate of said Debtor, has qualified and is now acting as such Trustee.

4. As per Order Modifying Chapter 13 Plan (Docket #32), the Debtor has surrendered the collateral.

5. The Movant requests that the collateral be abandoned from the property of the estate.

6. The Movant expressly determines that there is no reason for delay and expressly directs that this Order be entered as a Final Order against the Debtor and is therefore immediately effective and shall not be subject to *Rule 4001(a)(4)* of the Federal Rules of Bankruptcy Procedure.

WHEREFORE, Movant moves the Court to grant relief from the automatic stay as aforesaid; and Ally Capital requests such other relief to which it may be entitled in the premises.

King & Spencer, PLLC
Attorney for Ally Capital

*/s/ Olivia Spencer*
OLIVIA SPENCER, MS BAR #104439
For the Firm
King & Spencer, PLLC
1855 Crane Ridge Drive, Suite D
Jackson, MS 39216
Telephone: 601-948-1547
spencer@kingandspencer.net

**CERTIFICATE OF SERVICE**

I, Olivia Spencer, do hereby certify that I have this day caused to be served, *via* CM/ECF and/or United States Postal Service, a true and correct copy of the above and foregoing document to:

Thomas Carl Rollins, Jr
The Rollins Law Firm, PLLC
P.O. Box 13767
Jackson, MS 39236
trollins@therollinsfirm.com
**ATTORNEY FOR DEBTOR**

David Rawlings
P.O. Box 566
Hattiesburg, MS 39403
ecfnotices@rawlings13.net
**TRUSTEE**

United States Trustee
501 East Court Street
Suite 6-430
Jackson, MS 39201
USTPRegion05.JA.ECF@usdoj.gov
**U.S. TRUSTEE**

Cashelia Canelle Lewis
12 W Pecan Lane
Hattiesburg, MS 39402
**DEBTOR**

SO CERTIFIED this the 18th day of September 2026.

/s/ Olivia Spencer
Olivia Spencer

CARMAX®

# RETAIL INSTALLMENT CONTRACT

## Consumer Credit Sale

**Contract Number** [redacted]
**Contract Date** Jul 17, 2020

In this Contract, the words "you" and "your" mean anyone signing this Contract as a Buyer or Co-Buyer. The words "we", "us", and "our" mean the Seller or anyone to whom the Seller transfers its rights under this Contract. You understand that you may buy the Vehicle described below for cash or credit. By signing this Contract, you choose to buy the Vehicle on credit under the terms and conditions on all pages of this Contract. If there is a Buyer and a Co-Buyer, you are each individually liable to us for any amount due under this Contract.

| | Name | Address | Zip Code |
|---|---|---|---|
| **Seller** | CarMax Auto Superstores, Inc. | 11155 CARMAX WAY | GULFPORT, MS 39503 |
| **Buyer** | CASHELIA CANELLE LEWIS | 12 W PECAN LN | HATTIESBURG, MS 39402 |
| **Co-Buyer** | N/A | N/A | N/A |

| **ANNUAL PERCENTAGE RATE** The cost of your credit as a yearly rate. | **FINANCE CHARGE** The dollar amount the credit will cost you. | **Amount Financed** The amount of credit provided to you or on your behalf. | **Total of Payments** The amount you will have paid after you have made all payments as scheduled. | **Total Sale Price** The total cost of your purchase on credit, including your downpayment of $ 2,500.00 |
|---|---|---|---|---|
| 16.39 % | $ 13,016.63 e* | $ 22,215.85 | $ 35,232.48 e* | $ 37,732.48 e* |

| Your Payment Schedule will be: | | *e means an estimate |
|---|---|---|
| Number of Payments | Amount of Payments | When Payments are Due |
| 72 | $ 489.34 | Monthly, beginning Aug 28, 2020 |
| | | |

**Security.** You are giving a security interest in the motor vehicle being purchased.

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge that is the lesser of $5.00 or 5% of the installment in default.

**Prepayment.** If you pay amounts owed under this Contract early, you will not have to pay a penalty.

**Additional Information.** See the remainder of this Contract for additional information about nonpayment, default, any required repayment in full before the scheduled due date, prepayment refunds, and security interests.

**Optional GAP Waiver Agreement (GAP contract).** A GAP contract is a debt cancellation agreement. It is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. The charge for a GAP contract is in Item D.1. Your GAP contract is a part of this Contract. See your GAP contract for details on the protection it provides.

Term N/A (in months)

I want the optional GAP contract.

Buyer Signs: N/A

You agree to buy and we agree to sell you the following Vehicle:

Year/Make/Model 2017/HYUNDAI/TUCSON

VIN KM8J3CA22HU307506

New ______ Used X

The primary purpose and use for which you are purchasing the Vehicle is:

Personal, Family, or Household X

Business or Commercial ______ Agricultural ______

As part of this transaction, you sold the following vehicle(s) to Seller as a "Trade-In":

Year/Make/Model N/A

VIN N/A

Year/Make/Model N/A

VIN N/A

**A DOCUMENT/SERVICE FEE IS NOT AN OFFICIAL FEE AND IS NOT REQUIRED BY LAW. HOWEVER, IT MAY BE CHARGED TO A BUYER/LESSEE FOR THE PREPARATION, HANDLING AND PROCESSING OF DOCUMENTS AND THE PERFORMANCE OF SERVICES RELATED TO THE SALE OR LEASE OF A MOTOR VEHICLE AND MAY INCLUDE DEALER PROFIT. THIS NOTICE IS REQUIRED BY REGULATION OF THE MISSISSIPPI MOTOR VEHICLE COMMISSION.**

### ITEMIZATION OF AMOUNT FINANCED

| | |
|---|---|
| **A. CASH PRICE** | |
| 1. Cash Price of Vehicle | $ 21,998.00 |
| 2. Cash Price of CarMax Accessories | $ 0.00 |
| 3. Document / Service Fee | $ 199.00 |
| 4. Sales / Excise Tax | $ 1,109.85 |
| 5. Other: N/A | $ 0.00 |
| 6. Other: N/A | $ 0.00 |
| 7. **Total Cash Price** [1 through 6] | $ 23,306.85 |
| **B. DOWNPAYMENT** | |
| 1. Cash Downpayment | $ 2,500.00 |
| 2. Manufacturer's Rebate | $ 0.00 |
| 3. Credit From "Trade-In" Sold to CarMax | |
| a. Value of "Trade-In" | $ 0.00 |
| b. Proceeds from "Trade-In" Retained by Buyer | $ 0.00 |
| c. Pay-Off of "Trade-In" | $ 0.00 |
| d. Net Value of "Trade-In" [a minus b minus c, if negative, enter "0" and see line D.4. below] | $ 0.00 |
| 4. Other: N/A | $ 0.00 |
| 5. **Total Downpayment** [1 through 4] | $ 2,500.00 |
| **C. UNPAID BALANCE OF CASH PRICE** [A minus B] | $ 20,806.85 |
| **D. OTHER CHARGES INCLUDING AMOUNTS PAID TO OTHERS ON YOUR BEHALF** | |
| 1. Optional GAP Waiver Agreement | $ 0.00 |
| 2. To Public Officials | |
| a. MS Title Fee | $ 10.00 |
| b. N/A | $ 0.00 |
| c. N/A | $ 0.00 |
| d. N/A | $ 0.00 |
| e. N/A | $ 0.00 |
| f. N/A | $ 0.00 |
| g. N/A | $ 0.00 |
| 3. To Consumer Program Administrators, Inc. * for Optional Extended Service Contract | $ 1,399.00 |
| 4. To N/A for Pay-Off of the "Trade-In" where Pay-Off exceeds value of "Trade-In" [B(3)(c) minus B(3)(a)] | $ 0.00 |
| 5. **Total of Other Charges and Amounts Paid to Others on Your Behalf** [1 through 4] | $ 1,409.00 |
| **E. AMOUNT FINANCED** [C plus D] | $ 22,215.85 |

***Seller may retain a portion of this amount.**

The "Amount Financed" is also the "Principal Balance" and the "Total of Payments" is also the "Time Balance."

**This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 1. By initialing below you represent that you have read and agree to all provisions on all pages.**

Buyer's Initials ______ Co-Buyer's Initials ______



Exhibit A

# RETAIL INSTALLMENT CONTRACT

## Other Important Agreements

**Your Promise to Pay.** You agree to pay us the Amount Financed and Finance Charge provided for on Page 1 of this Contract according to the Payment Schedule, also shown on Page 1 of this Contract. This is a simple finance charge contract. This means we will figure the Finance Charge on a daily basis at the Annual Percentage Rate shown on page 1 of this Contract on the unpaid part of the Amount Financed. The Finance Charge, Total of Payments, and Total Sale Price shown on Page 1 of this Contract are based on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Also, if you pay late it is likely that your final payment will be larger than originally scheduled. You must make your payments to the Seller at the address shown above. If this Contract is transferred, you agree to make your payments to the subsequent holder of this Contract (Assignee) at the address provided by the Assignee or Seller.

**Your Representations.** You promise that you have given true and correct information in your credit application. You understand that in entering this Contract we have relied on the representations you have made to us. Upon request, you agree to provide us with documents and other information necessary to verify any item contained in your credit application.

**Applicable Law.** Federal law and the law of the State of Mississippi apply to this Contract. If any provision is not valid, all others stay valid to the extent allowed by applicable law.

**Late Charge.** You will pay a late charge as described in the Late Charge section on Page 1 of this Contract.

**Returned Check Service Charge.** If a check, draft, order, electronically converted check or electronic commercial debit presented to us for payment is returned unpaid due to insufficient funds, we may charge you a service fee up to a maximum amount of $15.00.

**Care, Use, and Location of the Vehicle.** You agree to pay us all you owe under this Contract even if the Vehicle is damaged, destroyed, or missing. You agree to keep the Vehicle in good condition and repair. If there is any loss or damage to the Vehicle, you will give us prompt written notice of the loss or damage. You agree not to use the Vehicle for hire or to sell, rent, lease, or transfer any interest in the Vehicle or this Contract. You agree that you will not permit the Vehicle to be used in any illegal manner or expose the Vehicle to misuse, seizure, confiscation, or involuntary transfer. The Vehicle will be kept at the address you provided to us in this Contract as shown on Page 1. You agree to notify us in writing of any change in your address or the location at which the Vehicle is regularly located. You are not allowed to remove the Vehicle from the United States. You may, however, take the Vehicle to Canada as long as it is for a period of 30 days or less.

**Insurance Requirements. You agree to have physical damage insurance covering loss or damage to the Vehicle as long as amounts are owed under this Contract. The insurance must have comprehensive, collision, fire, and theft coverage in amounts acceptable to us and with the minimum available deductible. All required insurance must be with a properly licensed insurer reasonably acceptable to us and must name us as an additional insured and loss-payee.** You agree to give us evidence of all required insurance promptly upon request. You agree that any insurance proceeds payable due to damage or loss of the Vehicle will be paid directly and solely to us. At our choice, we may use the insurance proceeds to repair the Vehicle or to pay amounts owed under this Contract. You agree that we may settle any insurance claim or sign any insurance checks on your behalf as necessary and if allowed by law.

**Failure to Maintain Insurance. If you fail to maintain the required physical damage insurance, we may buy it for you. At our choice, the insurance we buy may only cover our interest in the Vehicle and be limited to what you owe under this Contract at the time. This means the insurance we obtain may not cover your interest in the Vehicle or any loss that you incur. We will charge you for any insurance we purchase.** The insurance we buy may cost more than the insurance you could buy on your own. The charge for the insurance will be the amount advanced for it and a finance charge at the Annual Percentage Rate shown on Page 1 of this Contract or, if less, the highest rate allowed by law.

**Security Interest.** You give us a security interest in the Vehicle, any proceeds received for the Vehicle, and any accessories, equipment, and replacement parts installed on the Vehicle. You also give us a security interest in any insurance, service, or other contracts we finance for you and all proceeds from any insurance, service, or other contracts on the Vehicle, including refunds of premiums or charges from the contracts we finance for you. The security interest you are giving us secures all amounts owed by you under this Contract and all the other agreements you have made in this Contract.

**Optional Service or GAP Contracts.** This Contract may contain charges for an optional service or GAP contract. If you are in default under this Contract, you agree that we may claim benefits under any optional contract or cancel it to obtain a refund for unearned charges and reduce amounts you owe. If you cancel an optional contract, you authorize us to receive any refund for unearned charges and apply it to what you owe under this Contract.

**"Trade-In" and Downpayment.** You promise that you own and have valid title to any vehicle you sold to us as a "Trade-In." You represent that any "Trade-In" vehicle is free from any lien or security interest except as you have disclosed to us in writing. You promise that you have made the downpayment shown in the Itemization of Amount Financed on Page 1 of this Contract and that you have not borrowed it.

**Title, Taxes, and Other Charges.** You agree to make sure that the title to the Vehicle shows our security interest. You also agree that we will be the only party with a security interest in the Vehicle and that our security interest will be the only security interest that appears on the title. You agree that you are, or will be, the registered owner of the Vehicle and that you will comply with all registration, licensing, tax, and title laws that apply to the Vehicle. You agree to pay when due all taxes, fees, repair bills, storage bills, fines, assessments, and other charges relating to the Vehicle. At our choice, we may pay any of these items to protect our interest in the Vehicle. If we do so and if allowed by law, you agree to repay us at our request.

**Default and Required Repayment in Full.** You will be in default if you fail to make any payment required by this Contract. You will also be in default if you break any other promise you have made in this Contract or if a bankruptcy or insolvency proceeding is initiated by you or against you. If you default we may require that you pay all you owe on this Contract at once. All amounts owed following your default will continue to accrue finance charge or interest at the Annual Percentage Rate shown on Page 1 of this Contract or the highest rate allowed by law until paid in full.

**Other Remedies Upon Default.** Upon your default we may take (repossess) the Vehicle from you as long as we do so peacefully. All accessories, equipment or replacement parts will remain with the Vehicle following repossession.

**Getting the Vehicle and Property Back After Repossession.** If we repossess the Vehicle, you have the right to get it back until we sell it. This is your right to redeem. We will tell you what you need to do or how much you need to pay to redeem the Vehicle. If any personal property is in the Vehicle, we will store it for you at your expense. If you do not pick up your personal property, we will sell it if the law allows us to do so.

**Sale of the Repossessed Vehicle.** We will send you a written notice of sale before we sell the Vehicle. We will apply money from a sale to our expenses and then to amounts you owe under this Contract. Our expenses may include costs incurred by us in repossessing the Vehicle, holding and storing it, preparing it for sale, and selling it. If there is money left over, we will pay it to you unless we are required to pay it to someone else. If there is not enough money to pay all you owe, you will have to pay us the remaining balance.

**Collection Costs.** If we refer this Contract for collection or enforcement to an attorney who is not our salaried employee, you agree to pay our reasonable attorney's fees, plus court costs. The attorney's fees will not exceed 15% of the total amount owed under the Contract at the time of your default and we require that you pay all amounts owed under the Contract at once.

**Application of Payments and Partial Prepayments.** We may apply each payment to earned and unpaid finance charge and to other amounts you owe under this Contract in any order we choose. If you make a partial prepayment you must still continue to make your regular monthly payments as scheduled in this Contract.

**Delay in Enforcing Rights.** We will not lose any of our rights under this Contract if we delay or refrain from enforcing them. For example, we may extend the time for making some payments without extending others. Our acceptance of any late or partial payment does not excuse your late or partial payment or mean that you may continue to make late or partial payments.

**Communications.** You agree that we may monitor and record telephone calls regarding this Contract. You expressly consent that we may contact you (by calls, emails, text messages or other electronic messages) for any purpose related to this Contract by any means, including but not limited to the use of prerecorded/artificial voice messages or automatic telephone dialing devices. Your express consent applies to any email addresses or telephone numbers we obtain or you provide in any manner and at any time, including email addresses or cellular telephone numbers for which you may incur voice, data or other charges.

**This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 2. By initialing below you represent that you have read and agree to all provisions on all pages.**

Buyer's Initials CL ______ Co-Buyer's Initials ______

Exhibit A

[redacted]

# RETAIL INSTALLMENT CONTRACT

[redacted]

**Other Important Agreements**

## ARBITRATION PROVISION

This Arbitration Provision describes when and how a Claim (defined below) shall be arbitrated. Arbitration is a way of resolving disputes before one or more neutral persons, instead of having a trial in court before a judge and/or jury. **By signing this Contract, you and we agree to be bound by the terms of this Arbitration Provision.**

For purposes of this Arbitration Provision, references to "we," "us" and "our" mean the Seller, including its respective subsidiaries, affiliates, agents, employees and officers, or anyone to whom the Seller transfers its rights under the Contract.
**IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY, AND:**

- **ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.**
- **DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.**
- **YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION ("CLASS ACTION WAIVER").**
- **OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

**a. What Claims are Covered.** A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, the Vehicle and related goods and services that are the subject of the purchase and this Contract, or the collection or servicing of this Contract, including but not limited to:

- Initial claims, counterclaims, cross-claims and third-party claims;
- Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
- Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
- Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract, subject to paragraph (f) of this Arbitration Provision.

**b. Commencing Arbitration.** Either you or we may require any Claim to be arbitrated by first sending to the other party, by certified mail, a written notice of dispute ("Notice"). This Notice shall (1) describe the nature and basis of the Claim and (2) set forth the specific relief sought. If we do not reach an agreement to resolve the Claim within 30 days after the Notice is received, you or we may commence an arbitration proceeding.

Arbitration of a Claim must comply with this Arbitration Provision and the applicable rules and procedures of the arbitration Administrator. Arbitration is not mandatory for an individual Claim that you or we may choose to bring in small claims court or the state's equivalent court, if any. If that Claim is transferred, removed or appealed to a different court, you or we then may choose arbitration.

**c. Choosing the Administrator.** If you initiate the arbitration proceeding, you may choose either of the following arbitration Administrators: (1) American Arbitration Association, 120 Broadway, New York, NY 10271, www.adr.org, (800) 778-7879 or (2) JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com, (800) 352-5267. The Administrator you choose will have rules that apply to the proceeding. Important information regarding the arbitration process and more complete information regarding arbitration procedures may be found at either Administrator's website. If the Administrator you choose is unable or unwilling or ceases to serve as the Administrator, you or we may choose the other Administrator. If both Administrators are unable or unwilling or cease to serve as the Administrator, you or we may choose another Administrator, subject to the other's approval. In all cases, any arbitrator must be a lawyer or a retired judge with at least 10 years of legal experience. If we initiate the arbitration proceeding, we will give you 20 days to choose the Administrator. If you do not choose the Administrator within that time, we will choose one for you. No matter which Administrator is chosen, you shall have the right to be represented by an attorney of your own choosing, subject to any limitations in the Administrator's rules.

**d. Choosing the Location.** Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

**e. Paying for Arbitration.** Each Administrator charges fees to administer an arbitration proceeding. This may include fees not charged by a court. When you choose an Administrator, you should carefully review the fees charged by the Administrator. The fees and costs of any arbitration, including any initial filing fees, shall be paid in accordance with the rules and procedures of the Administrator. Each party must pay the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law or the Administrator's rules, procedures or standards provide otherwise.

**f. Class Action Waiver. You give up your right to participate in a class action. This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim.** Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's Claim or Claims. Notwithstanding any other part of this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator. If a court limits or voids the Class Action Waiver, then this entire Arbitration Provision (except for this paragraph) will be null and void.

**g. Right to Discovery.** The parties shall have the right to discovery of non-privileged information and documents relevant to the Claim, subject to the rules and procedures of the Administrator.

**h. Arbitration Result and Right of Appeal.** Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. In response to a timely request from either party, the arbitrator must provide a brief written explanation of the basis for any award. The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act. Any party can appeal the award to a three-arbitrator panel administered by the Administrator, which must reconsider any aspect of the initial award requested by the appealing party. Reference in this Arbitration Provision to the "arbitrator" means the panel of arbitrators if an appeal of the arbitrator's decision has been taken. Subject to applicable law, costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal, unless applicable law or the Administrator's rules provide otherwise. However, we will consider any good faith, reasonable request for us to pay all or any part of those fees if you are the appealing party.

**i. Governing Law.** This Arbitration Provision is governed by the Federal Arbitration Act and not by any state arbitration law. The arbitrator must apply applicable statutes of limitations and claims of privilege recognized at law, and applicable substantive law consistent with the Federal Arbitration Act. The arbitrator is authorized to award all individual remedies permitted by the substantive law that would apply if the action were pending in court.

**j. Rules of Interpretation.** This Arbitration Provision survives the repayment of all amounts owed to us, the transfer of the Contract, and any bankruptcy by you, to the extent not inconsistent with applicable bankruptcy law. Except as provided in paragraph (f), if any part of this Arbitration Provision is determined to be invalid or unenforceable, this Arbitration Provision and the Contract will remain enforceable. In the event of a conflict or inconsistency between this Arbitration Provision and the applicable arbitration rules or the other provisions of this Contract or any other contract between you and us, this Arbitration Provision will govern.

**This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 3. By initialing below you represent that you have read and agree to all provisions on all pages.**

Buyer's Initials ______________ Co-Buyer's Initials ______________

[redacted]

Exhibit A

# RETAIL INSTALLMENT CONTRACT

**Other Important Agreements**

## NO LIABILITY INSURANCE INCLUDED

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.**

**PROPERTY INSURANCE: YOU ARE REQUIRED TO OBTAIN AND MAINTAIN INSURANCE ON THE VEHICLE, ENDORSED TO PROTECT US AS LOSS-PAYEE. YOU MAY OBTAIN THE INSURANCE FROM ANY AGENT OR INSURANCE COMPANY YOU CHOOSE REASONABLY ACCEPTABLE TO US.**

**YOUR INSURANCE INFORMATION**

LIENHOLDER/LOSS-PAYEE Ally INSURED'S NAME CASHELIA CANELLE LEWIS

PHYSICAL DAMAGE DEDUCTIBLES – COMPREHENSIVE $ 500.00 COLLISION $ 500.00

INSURANCE COMPANY STATE FARM

POLICY NUMBER [redacted] EFFECTIVE DATE 03/23/2020 EXPIRATION DATE 09/23/2020

INSURANCE AGENT NAME CLYDE BRYANT TELEPHONE NUMBER [redacted]

You agree that you have or will obtain the required insurance coverage as shown above and you acknowledge that this is required by the Insurance Requirements section on Page 2 of this Contract.

**USED CAR BUYERS GUIDE. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

**SPANISH TRANSLATION: GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.**

### NOTICE

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

### VEHICLE RETURN POLICY

You may return the Vehicle to CarMax for a refund within 7 calendar days if the condition of the Vehicle does not change. This policy only applies to used vehicles.

### ENTIRE AGREEMENT

This Contract contains the entire agreement between you and us relating to this Contract. We may agree to extend or defer a payment and provide you written confirmation. Any other change to this Contract must be in a writing signed by us. No oral modifications to this Contract are binding.

**Notice to the Buyer: 1. Do not sign this Contract before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the Contract you sign.**

**This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 4. By signing below you represent that you have read and agree to all provisions on all pages, including the Arbitration Provision on Page 3 of this Contract. You are also confirming that you have received a completely filled-in copy of this Contract and any optional GAP Waiver Agreement, each of which has been signed by the Seller.**

Seller CarMax Auto Superstores, Inc. Buyer's Signature

By Co-Buyer's Signature

### ASSIGNMENT

Seller hereby sells, assigns and transfers to Ally (Assignee) this Contract, all obligations of Buyer and Co-Buyer hereunder, all rights, powers, and privileges herein given to Seller, and all right, title, and interest of Seller in and to the property securing this Contract. If on the date of this assignment there is in effect a Dealer Agreement between Seller and Assignee pertaining to the sale of contracts to Assignee by Seller, the sale and assignment of this Contract to Assignee is made subject to all the terms and conditions of that Dealer Agreement.

Seller/Assignor

Date Jul 17, 2020 Title

[redacted]

Exhibit A

Execution Copy

# LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that the undersigned, Ally Financial Inc. formerly known as GMAC Inc., GMAC LLC, and General Motors Acceptance Corporation d/b/a/ GMAC (the "Company") does hereby make, constitute and appoint Ally Bank a/k/a Ally Bank Corp. and Ally Capital Corp. and its wholly owned subsidiary Ally Servicing LLC (collectively the "Servicer") as its true and lawful attorney-in-fact, with full power of substitution, with respect to (i) all retail installment sale contracts, lease agreements, and loans serviced and administered by said attorney-in-fact for the benefit of Company, (ii) the collateral securing such retail installment sale contracts and loans and the vehicles related to such lease agreements, (iii) all security documents related to such contracts, loans and leases, and (iv) all payments and proceeds with respect to the foregoing (collectively, the "Property"), (a) to sign, acknowledge, file, appear as lien holder on, in the name, place and stead of Company, all certificates, documents and instruments relating to the Property, including, but not limited to, any instrument of assignment, certificate of title, notice of lien, assignment of lien, application for a certificate of title or duplicate of a certificate of title, application to register or transfer title, document to effect the notation of a lien upon a certificate of title or the assignment of such a lien, notice of any such assignment, application to register or transfer the rights as secured party under any policy of insurance, insurance claim, demand or request for premium refund, bankruptcy proof of claim, claim or demand against any dealer or against any person who may have an obligation to Company pursuant to or with respect to the Property, affidavit of repossession, bill of sale, notice of sale, lien release and odometer statement; (b) to authorize and consummate the sale and disposition of any part of the Property; (c) to collect and receive proceeds relating to or with respect to the Property; (d) to commence or participate, in the Servicer's own name or in the name of Company, a legal proceeding related to the Property under the Agreement, and in connection with any such proceeding to execute and deliver in the Servicer's or Company's name any notices, demands, claims, complaints, responses, affidavits or other documents or instruments; and (e) further as said attorney-in-fact may deem fit and proper to perfect the right, title and interest of Company in any part of the Property.

The undersigned further hereby gives and grants unto said attorney-in-fact full power and authority to do and perform every act necessary and proper to be done in the exercise of any of the foregoing powers as fully as the undersigned might or could do if personally present.

The undersigned further ratifies the actions taken by said attorney-in-fact in connection with the servicing and administration of retail installment sale contracts, loans and lease agreements by said attorney-in-fact prior to the execution date below for the benefit of Company.

This Power of Attorney shall continue in effect until superseded by a newer power of attorney between Company and Servicer or until revoked in writing by the undersigned or another authorized representative of Company. Anyone to whom this Power of Attorney is presented may rely upon it without further inquiry of the undersigned. A photocopy of this Power of Attorney shall have the same effect as an original, manually signed and acknowledged counterpart of this Power of Attorney.

IN WITNESS WHEREOF, the undersigned has executed this instrument on this 28th day of January, 2020.

Ally Financial Inc.

By: ______________________
Name: Jeffrey A. Belisle
Title: Corporate Secretary



Exhibit A

Execution Copy

ACKNOWLEDGMENT

STATE OF MICHIGAN )
) ss.
COUNTY OF WAYNE )

On this 28th day of January, 2020, before me personally appeared Jeffrey A. Belisle, who acknowledged to me to be an officer and authorized representative of the above legal entity, and that he, as such officer and authorized representative, being fully authorized to do so, executed the foregoing instrument for the purposes therein contained as the free act and deed of said legal entity, and as his free act and deed as an officer and authorized representative of said legal entity.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Donna M. DiCicco

Notary Public
My Commission expires: ____________

DONNA M. DICICCO
NOTARY PUBLIC, STATE OF MI
COUNTY OF MACOMB
MY COMMISSION EXPIRES May 25, 2025
ACTING IN COUNTY OF WAYNE



Exhibit A

# CERTIFICATE OF TITLE

[redacted]

## STATE OF MISSISSIPPI

**ORIGINAL**

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER | TITLE TEXT (E.G. UNIT #) |
|---|---|---|---|---|---|---|
| KM8J3CA22HU307506 | HYUN | 2017 | TUCSON | UV | MS1422979584 | |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL | NEW/USED | TYPE OF VEHICLE | ODOMETER - NO TENTHS |
|---|---|---|---|---|---|
| 07/30/2020 | | 4 | USED | PC | 25927 ACTUAL |

**OWNER(S)**

LEWIS, CASHELIA CANELLE
12 W PECAN LN
HATTIESBURG MS 39402-8834

**BRANDS**

**1ST LIENHOLDER**

ALLY FINANCIAL
P O BOX 8116
COCKEYSVILLE MD 21030

**DATE:** 07/17/2020

**2ND LIENHOLDER**

**DATE:**

**MAIL TO**

ALLY FINANCIAL
P O BOX 8116
COCKEYSVILLE MD 21030

[redacted]

[redacted]

**LIEN SATISFACTION.** THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF

1ST LIEN ______________________ (LIENHOLDER) BY ______________________ (SIGNATURE AND TITLE)

THIS ____________ DAY OF ____________ 20______

2ND LIEN ______________________ (LIENHOLDER) BY ______________________ (SIGNATURE AND TITLE)

THIS ____________ DAY OF ____________ 20______

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS

THE 30TH DAY OF JULY 20 20

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described subject to the liens or security interests as may subsequently he filed with the Mississippi Department of Revenue This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1 Mississippi Code of 1972 and subject to the provisions thereof

CONTROL NUMBER

[redacted]

MISSISSIPPI DEPARTMENT OF REVENUE

Exhibit B

[redacted]

VOID IF ALTERED

[redacted]